UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON THOMAS,

    Petitioner,

v.

CATHERINE STODDARD,

    Respondent.

Case No. 14-cv-13232
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING MOTION TO STAY [7]**

In 2012, a state jury convicted Petitioner Aaron Thomas of three firearm offenses, including felon in possession of a firearm. The Michigan Court of Appeals affirmed Thomas' conviction and sentence, *see generally People v. Thomas*, No. 309420, 2013 WL 3107484 (Mich. Ct. App. June 20, 2013), and the Michigan Supreme Court denied Thomas leave to appeal further, *People v. Thomas*, 840 N.W.2d 323 (Mich. Dec. 23, 2013).

In August 2014, Thomas filed a petition here, asking this Court to grant him a writ of habeas corpus for two reasons: (1) the evidence adduced at trial was insufficient for a jury to conclude that he was guilty beyond a reasonable doubt in violation of his Fourteenth Amendment rights and (2) the admission of prior-conviction evidence at trial violated his Sixth and Fourteenth Amendment rights. (Dkt. 1, Pet. for Habeas at Pg ID 3.) Thomas says these claims are exhausted, i.e., the state courts have already had an opportunity to rule on them. (Pet. for Habeas at Pg ID 3.) It would thus appear that these claims, once Respondent Catherine Stoddard files her response, are ready for this Court's resolution.

Nonetheless, about a month after he filed his petition, on September 11, 2014, Thomas asked this Court to stay this case and hold his habeas petition in abeyance. (*See generally* Dkt. 7,

Mot. to Stay.) Thomas explains that after the Michigan Supreme Court denied leave to appeal his conviction on the two grounds indicated above, he learned of a possible third grounds for appeal: a trial-court order that had directed the prosecution to, among other things, provide him with "all scientific and laboratory reports." (Dkt. 7, Mot. to Stay ¶¶ 6, 7.) Thomas says that laboratory reports have the potential to exculpate him by showing that his fingerprints were not found on the weapon he was convicted of possessing. (*See* Mot. to Stay ¶ 8.) Thomas further asserts the transcript of the state-court proceedings will show that the police suppressed this exculpatory information. (*Id.*) Thomas explains that in the month before he filed his habeas petition, he filed motions with the state trial court asking for the transcript and other trial-court documents. (Mot. to Stay ¶¶ 9–12.) But, as of the filing of his motion to stay, "the trial court judge ha[d] not entertained" Thomas' requests. (Mot. to Stay ¶ 13.) Thomas thus asks this Court to hold his petition, which he asserts contains only exhausted claims, in abeyance while he "returns to state court to exhaust additional claims." (Mot. to Stay at 7.)

Thomas says that failing to stay his petition while he exhausts the third claim could result in the claim being barred by the Antiterrorism and Effective Death Penalty Act's statute of limitations. (Mot. to Stay at 3 ¶ 15, at 7.) Under AEDPA, a one-year limitations period applies to an application for a writ of habeas corpus, with the clock starting from the latest of several dates, here, apparently, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Michigan Supreme Court denied leave on December 23, 2013, meaning that Thomas' conviction became "final" under § 2244(d)(1)(A) at the expiration of his ninety days to seek certiorari from the United States Supreme Court, i.e., on or around March 23, 2014. *See, e.g.*, *Johnson v. Rapelje*, 542 F. App'x 453, 454 (6th Cir. 2013). Although March 23, 2014 was still about six

months away when Thomas filed his motion to stay, he apparently believed that if he dismissed his petition, filed a motion based on his suppressed-evidence claim in state court, and then refiled a habeas petition including that now-exhausted claim (assuming the state court did not grant relief), he would be time-barred by AEDPA's statute of limitations. (*See* Mot. to Stay at 15.) But with proper diligence, it is hard to say that three months to file a state-court motion and three months to refile a perfected habeas petition is not sufficient. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). In any event, dismissal at this point, with less than a month remaining on the limitations period, would pose a great challenge for Thomas to make the trip to state court and back—even with the tolling provided by § 2244(d)(2).

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court addressed a similar—but not identical—situation. There, Charles Rhines had filed a "mixed" petition for habeas corpus: it contained both claims that he had given the state courts a full opportunity to adjudicate and those he had not. *Id.* at 272–73. The district court opted to stay the mixed petition so Rhines could exhaust the petition's unexhausted claims in state court, but the Eighth Circuit Court of Appeals thought this procedure problematic given that, under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), a district court was required to dismiss a habeas petition containing both unexhausted and exhausted claims. *See Rhines*, 544 U.S. at 273. Although not disagreeing with the appellate court's reading of *Rose*, the Supreme Court noted, "[w]hen we decided [*Rose v.*] *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions. As a result, petitioners who returned to state court to exhaust their previously unexhausted claims could come back to federal court to present their perfected petitions with relative ease." *Rhines*, 544

U.S. at 274. Post-AEDPA, the Supreme Court explained, "If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review. . . . Similarly, if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim." *Id.* at 275.

"[R]ecogniz[ing] the gravity of this problem," the Court turned to the "stay-and-abeyance" solution employed by the district court and considered the competing interests at stake. *Id.* at 275–76. On the one hand, district courts have discretion to manage their dockets, including by issuing stays, and "AEDPA [did] not deprive district courts of that authority," *id.* at 276. And, as just discussed, in some situations, dismissal rather than stay would foreclose habeas review to a prisoner. *See id.* at 278. On the other hand, in enacting AEDPA, Congress expressed its interest in finality and in encouraging state prisoners to seek relief from state courts before their federal counterparts. *Id.* at 276. "Stay and abeyance, if employed too frequently, ha[d] the potential to undermine these twin purposes." *Id.* at 277. Thus, the Court in *Rhines* concluded that "stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. Additionally, "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.* And the Court in *Rhines* added, "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Id.* at 278. Notably, if a district court issues a stay under

4

*Rhines*, it stays a mixed petition and, thus, effectively treats unexhausted claims as timely filed. *King v. Ryan*, 564 F.3d 1133, 1140 (9th Cir. 2009) ("When implemented, the *Rhines* exception eliminates entirely any limitations issue with regard to the originally unexhausted claims, as the claims remain pending in federal court throughout."); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (providing that where prisoner had a pending motion for state post-conviction relief, but had good reason to doubt whether he had "properly filed" the motion so as to invoke AEDPA's state-post-conviction-relief tolling under 28 U.S.C. § 2244(d)(2), prisoner might file a "protective" application for habeas to stop the statute-of-limitations clock on the still unexhausted claims).

Because less than a month of AEDPA's one-year limitations period remains, the statute of limitations problem that confronts Thomas appears similar to the hypothetical proposed in *Rhines*: should the Court now dismiss his habeas petition, he would have difficulty timely refiling it after pursuing any unexhausted claims in state court. *See Rhines*, 544 U.S. at 275 (noting that if court dismissed habeas petition "close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period [ran would be] slim.").

But there is an important difference: dismissal is not an option for the Court. Thomas' habeas petition, at least as far as the Court can tell, is not mixed like Rhines' was. A federal district court confronted with a mixed petition has these two options: dismiss the petition (*Rose*'s rule) or, if certain criteria are met, stay the petition (*Rhines*' exception). *See King*, 564 F.3d at 1140 ("*Rhines* carved out an exception to *Rose*'s total exhaustion rule, allowing a mixed petition to remain pending in federal court under limited circumstances."). The options before this Court are different: proceed to adjudicate the two exhausted claims in Thomas' petition while Thomas

5

contemporaneously returns to state court on other claims, or stay this case while Thomas does so. *See Nowaczyk v. Warden, New Hampshire State Prison*, 299 F.3d 69, 80 (1st Cir. 2002) ("The situation here is critically different [from our precedents involving mixed petitions]. Nowaczyk's petition contained only exhausted claims. Nothing prevented the district court from adjudicating those claims immediately[.]"). Thus, the question for this Court is whether to proceed in parallel (on the exhausted claims) with state-court post-conviction proceedings (on the unexhausted claim) or to hold off until those state proceedings conclude. These were not the options confronting the district court in *Rhines*.

Obviously, had Thomas sought to amend his habeas petition to add the suppressed-evidence claim, and if the Court were to have granted that request, his petition would become mixed, and then *Rhines* might be directly applicable. But this procedure presents its own difficulties. It is well settled that the standard to permit amendment of a habeas petition is that set forth by Federal Rule of Civil Procedure 15. *See* 28 U.S.C. § 2242 (providing that an application for habeas "may be amended or supplemented as provided in the rules of procedure applicable to civil actions); *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (providing that Rule 15 is "made applicable to habeas proceedings by § 2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11"). And it is well settled that leave under Rule 15 should not be granted where the claim to be added is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). And our Court of Appeals says that a claim is futile if it cannot "withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). This in turn invokes the plausibility standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See e.g.*, *In re B & P Baird Holdings, Inc.*, No. 14-1060, 2015 WL 24922, at *4 (6th Cir. Jan. 2, 2015). And even if *Twombly* and *Iqbal*'s standards do not apply to

amendments of a habeas petition, the Supreme Court has said that the pleading standard for a habeas petition is greater than that demanded by Rule 8. *See Mayle*, 545 U.S. at 655; Advisory Committee Note on Habeas Corpus Rule 4 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)). These standards governing amendment of a habeas petition, coupled with the rule of comity and the aims of AEDPA, counsel against deciding whether Thomas' suppressed-evidence claim is futile before the state courts pass upon that claim. If the Court were to do so, it might affect the state court's view of the claim. *Cf. Rose*, 455 U.S. at 518 ("Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." (internal quotation marks omitted)). Additionally, by allowing the state court to address the claim in the first instance, this Court will benefit from a crystalized assertion of the claim, thereby easing the futility assessment.

As Thomas has not sought to amend his petition (and the Court would be unlikely to engage in that analysis even if he had), the Court will consider factors similar to those set out in *Rhines*, but the Court's discretion will be guided by different considerations from those in *Rhines*. As in *Rhines*, the Court still considers the merit of the unexhausted claims. But the primary reasons it does so differs from those discussed in *Rhines*. For instance, the Court considers the consequences to the habeas petitioner if it were to proceed to adjudicate the petition and find that relief is not warranted before the state courts ruled on unexhausted claims.

In that scenario, should the petitioner subsequently seek habeas relief on the claims the state courts rejected, he would have to clear the high hurdle of filing a second habeas petition. *See* 28 U.S.C § 2244(b)(2); *McLeod v. Peguese*, 337 F. App'x 316, 324 (4th Cir. 2009) ("Respect for the finality of criminal judgments provides the impetus for the heavy burden placed on successive § 2254 petitioners by § 2244(b)(2)(b)(ii)."). The risk, then, is that Petitioner might have to meet a higher standard in order to present the court with potentially meritorious claims that he did not include in the original petition.

Also relating to the merit of the unexhausted claims is the efficient use of judicial resources. If this Court were to proceed in parallel with state post-conviction proceedings, there is a risk of wasting judicial resources if the state court might grant relief on the unexhausted claim. *See Nowaczyk*, 299 F.3d at 78 ("Considerations of judicial economy support the district court's decision to withhold decision on [habeas] claims that could have been mooted by the pending state proceedings."); *cf. Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("[T]here are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." (internal quotation marks omitted)). The flip side is also relevant: if the exhausted claims in the petition appear to be very clear bases for habeas relief, proceeding to adjudicate those claims would likely save state-court resources. In deciding whether to proceed or stay, the Court also considers that its adjudication of Thomas' exhausted claims might impact the state courts' adjudication of his unexhausted claims if the claims overlap factually or legally.

Accordingly, where, as here, a habeas petition contains only exhausted claims, and the petitioner seeks to stay the petition so that he can return to state court on unexhausted claims not yet part of the petition, the Court believes that its discretion to stay the petition is informed both by the potential for parallel federal habeas and state post-conviction proceedings and *Rhines*. Chief among these considerations is the apparent merit of the unexhausted and exhausted claims, and, relatedly, whether this Court would benefit from a state-court ruling on the unexhausted claims. *Cf. Rhines*, 544 U.S. at 277–78 (directing federal habeas courts to consider whether unexhausted claims in a mixed habeas petition are "plainly meritless"). But *Rhines*' "good cause" requirement is not irrelevant: the Court is less likely to find parallel-litigation unfairly prejudicial to a habeas petitioner if the petitioner lacks a good reason for having created that potential in the first place.

Here, the relevant considerations weigh in favor of a stay. The Court is not now in a position to determine whether, as Thomas claims, the police suppressed exculpatory laboratory reports. So the Court cannot say that his unexhausted claim is plainly meritless. On the flip side, a casual review of Thomas' petition does not reveal a claim that plainly warrants habeas relief.[1] Further, should the state court deny post-conviction relief (such that Thomas' habeas petition does not become moot), the Court will still benefit from the state courts' adjudication of this claim in determining whether to permit Thomas to amend his petition to add the claim. And the Court foresees no prejudice to Respondent in staying this case—indeed, Stoddard has not opposed Thomas' motion to stay despite ample opportunity to do so. On the other hand, Thomas could be prejudiced by having to simultaneously fight two proceedings in separate courts and, as noted, if this Court were to rule before the state courts, Thomas would have the heavy burden of

---

[1] It appears that the portion of Thomas' brief corresponding to his habeas claim based on the introduction of prior convictions was not submitted to the Court.

satisfying 28 U.S.C. § 2244(b)(2)'s second-or-successive-petition requirements should he ultimately seek habeas relief on his suppressed-evidence claim. Finally, the Court finds that Thomas has demonstrated "good cause" for the failure to exhaust state remedies: he says he did not know about the trial-court order directing the production of laboratory reports until after the Michigan Supreme Court denied leave.

Accordingly, the Court hereby GRANTS Thomas' motion to stay and hold his habeas petition in abeyance. (Dkt. 7.) Thomas must file a motion for relief from judgment in state court within 60 days of entry of this order and then immediately file a notice with this Court that includes proof of the state-court filing and a copy of the filing itself. If he fails to timely notify the Court that he has sought state-court post-conviction relief, the Court will proceed to adjudicate the petition as it stands. Within 60 days after the conclusion of the state-court post-conviction proceedings, Thomas may move to amend his habeas petition to add the suppressed-evidence claim. Otherwise, Thomas must inform the Court that he will proceed with the petition as is. Because Thomas filed his motion to stay five months ago, the Court will equitably toll AEDPA's statute of limitations during each of the 60-day periods, thereby placing Thomas in the position he would have been in had the Court ruled on the motion soon after it was filed. *See Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) ("The doctrine of equitable tolling allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." (internal quotation marks omitted)).[2] To avoid administrative difficulties, the Court orders the Clerk of

---

[2] The Court recognizes that equitable tolling should be "used sparingly" to pause AEDPA's clock. *Simpson*, 624 F.3d at 784. But equitable tolling is not part of the general procedure outlined in this opinion—the Court applies it here only due to the delay in resolving Thomas' motion, delay not attributable to Thomas' conduct. Had the Court ruled earlier, equitable tolling would not have been necessary given that Thomas would still have had many

Court to close this case for statistical purposes only. Nothing in this order shall be considered a disposition of Thomas' petition.

SO ORDERED.

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
                                      UNITED STATES DISTRICT JUDGE

Dated: March 5, 2015

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 5, 2015.

                                      s/Jane Johnson
                                      Case Manager to
                                      Honorable Laurie J. Michelson

---

months left on the one-year clock and he is entitled to statutory tolling during post-conviction proceedings. *See* 28 U.S.C. § 2244(d)(2); *Cowherd v. Million*, 380 F.3d 909, 913–14 (6th Cir. 2004) (en banc) (holding that, under §2244(d)(2), a state post-conviction motion tolled AEDPA's statute of limitations so long as the motion challenged the state-court "judgment" and, therefore, tolling applied even if the state post-conviction motion did not raise federal claim). On the other hand, nothing prevented Thomas from filing for post-conviction relief pending this Court's disposition of his motion to stay, which would have likely obviated the need for any equitable tolling. In the future, petitioners facing Thomas' situation would be prudent to elect that route.